1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT FOR THE

9

10                         EASTERN DISTRICT OF CALIFORNIA

11

12   **JEANETTE ARROYO AND ON**          )   **CV F 07-1443 AWI SMS**
     **BEHALF OF HER MINOR SON**         )
13   **JARED ERIC ARROYO-GARCIA,**       )
                                         )   **ORDER ON DEFENDANTS'**
14              **Plaintiffs**,          )   **MOTION TO DISMISS**
                                         )
15          **v.**                       )
                                         )   **F.R.C.P. 12(b)(6)**
16   **COUNTY OF FRESNO, et al.,**       )
                                         )
17              **Defendants.**          )   Document # 8
                                         )
18   _____    )

19

20

21

22

23          This is an action for damages and injunctive relief by plaintiff Jeanette Arroyo

24   ("Plaintiff") on behalf of herself and her minor son Jared Eric Arroyo-Garcia ("Jared")

25   against County of Fresno ("County") and a number of individual and governmental entity

26   defendants.  For purposes of the instant motions to dismiss, there are two groups of

27   defendants.  One group consists of the Fresno County Superior Court, Family Court services

28   of Fresno County, and a number of individuals connected with the Superior Court or with

     agencies of the Superior Court.  For purposes of this discussion, this group of defendants is

1   hereinafter referred to as the "Court Defendants."  The other group of defendants appears to

2   consist of agencies and individuals connected with the County of Fresno, its Child Support

3   Services Department, District Attorney's Office, and its "Child Abduction Unit."  This group

4   of defendants is hereinafter referred to as the "County Defendants."  In the instant motion,

5   both sets of Defendants move to dismiss the complaint pursuant to Rule 12(b)(6) of the

6   Federal Rules of Civil Procedure, or, in the alternative, Pursuant to Rule 8 of the Federal

7   Rules of Civil Procedure.  For the reasons that follow, Plaintiffs' complaint will be dismissed

8   with prejudice.

9                    **PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

10          Plaintiff filed her complaint on October 3, 2007.  The complaint is a document of

11   some 112 pages and 97 Counts.  The allegations set forth in the complaint are suffused with

12   inflammatory characterizations of defendant conduct, and vague and conclusory allegations

13   of "torture," "terrorism," and violation of "protected activities."  Insofar as events or

14   circumstances giving rise to this action can be teased from the complaint, Plaintiff's primary

15   contention appears to be that she was unfairly and/or unlawfully denied a hearing and an

16   order that would have modified the existing child custody order so that Plaintiff could move

17   to southern California with Jared to take advantage of a relocation opportunity being offered

18   by her former employer.

19          So far as can be discerned from the complaint, Plaintiffs' problems began in 2003

20   when the government agency Plaintiff worked for went through a reduction in force.

21   Apparently Plaintiff sought a modification of the then-operative child custody order so that

22   Plaintiff would be allowed to move to a location in Southern California to take advantage of a

23   relocation offer.  The order in force at the time allegedly granted Plaintiff 78% custody of

24   Jered.  There ensued a number of encounters or and/or proceedings with the family court and

25   its personnel, as well as encounters with county Child Protective Services, the District

26   Attorney's Office and associated personnel.  Apparently these encounters or proceedings

27   resulted in decisions that were adverse to Plaintiff's efforts to favorably modify the child

28   custody order.  Although the complaint does not specify the current state of the custody

2

1    orders, the complaint seems to suggest Plaintiff is currently limited to supervised visitation

2    with Jared.

3           Among all the interchanges between Plaintiff and Defendants alleged in the

4    complaint, two dates appear to loom large.  The first is December 8, 2005, when Plaintiff

5    alleges a hearing or trial was conducted of which Plaintiff received no notice.  Although the

6    complaint does not specify what the December 8 hearing or trial was about, the court is left

7    with the impression that testimony unfavorable to Plaintiff concerning her custody of Jared

8    was presented.  The second date is July 19, 2006.  Although it is not precisely clear what

9    transpired at the July 19 hearing, the complaint seems to allege Plaintiff's motion to vacate

10   the December 8 hearing was denied, and information that reflects badly on Plaintiff's

11   relationship with Jared was presented by individual defendant Kimberly Day, and perhaps

12   others.

13          The complaint generally consists of long, rambling narrative descriptions of alleged

14   facts and characterizations surrounding a particular court event, interspersed with briefer

15   allegations casting the information contained in the long narratives as various forms of

16   constitutional violation.  For example, Count 22 is a fourteen-page narrative loosely

17   describing events surrounding the hearing of July 19, 2006, with the apparent intent of

18   alleging a "Procedural Due Process" violation with respect to the hearing.  In the narrative,

19   Plaintiff alleges she was falsely accused of having "psychologically tortured" her son, Jared,

20   and alleges a variety of lies and misdeeds, and culpable omissions on the part of the Superior

21   Court Judge, Family Services, the District Attorney's Office, and individuals affiliated with

22   each of these departments.  "Count 23" incorporates "Count 22" by reference and alleges

23   "Terrorism."  Similarly, "Count 24" incorporates "Count 22" by reference and alleges

24   "Torture."

25          In general, the Complaint recounts various aspects of either the December 8 hearing

26   or the July 19 hearing, coupled with alleged non-responsiveness by the court or Child

27   Protective Services to allegations made by Plaintiff regarding Jared's father's unfitness to

28   parent, and casts these allegations alternatively as "Procedural Due Process," "Protected

3

1   Activities," "Torture," or "Terrorism."  The complaint also alleges one count of fraud-related

2   activities and one count of conspiracy in which the RICO Act is invoked without any further

3   specification.

4       The complaint was filed on October 3, 2007.  The Court Defendants filed their

5   motion to dismiss on October 30, 2007.  The County Defendants filed their motion to dismiss

6   the following day.  Plaintiff's opposition to the motions to dismiss was filed on November

7   16, 2007.  The Court Defendants filed a reply on November 26, 2007.  On November 29,

8   2007, the court vacated the scheduled hearing date of December 3, 2007, and took the matter

9   under submission as of that date.

10                          **LEGAL STANDARD**

11      The Court Defendants move to dismiss the complaint for failure to state a claim upon

12   which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil

13   Procedure.[1]  In substantial part, the Court Defendants contend the complaint fails to state a

14   claim for relief because it fails to conform to the requirement of Rule 8 that the complaint

15   provide "a short and plain statement of the claim."  The County Defendants move to dismiss

16   solely on 12(b)(6) grounds.

17      A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil

18   Procedure if it appears beyond doubt that the plaintiff can prove no set of facts in support of

19   the claim that would entitle him to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73

20   (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Balistreri v. Pacifica Police

21   Department, 901 F.2d 696, 699 (9th Cir. 1990).  A Rule 12(b)(6) dismissal can be based on

22   the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a

23   cognizable legal theory.  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th

24   Cir.1984).  In deciding a Rule 12(b)(6) motion, courts do not "assume the truth of legal

25   conclusions merely because they are cast in the form of factual allegations."  Warren v. Fox

26   ──────────────

27   [1]      All references to "Rules" hereinafter refer to the Federal Rules of Civil Procedure

28   unless otherwise specified.

                                  4

1   Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003); Western Mining Council v.

2   Watt, 643 F.2d 618, 624 (9th Cir.1981).

3       Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain

4   statement of the claim showing that the pleader is entitled to relief."   Fed.R.Civ.P. 8(a)(2).

5   Although a complaint may be dismissed in whole or in part for failure to conform to the

6   requirement of Rule 8 independent of the validity of the claim stated, McHenry v. Renne, 84

7   F.3d 1172, 1178 (9th Cir. 1996), a complaint that fails to state a claim upon which relief can

8   be granted may, at the same time, fail to comply with Rule 8's requirement for a short, plain

9   statement of the claim.  The purpose of the complaint is to provide the opposing party with

10  fair notice of the claim against it.  Lynn v. Sheet Metal Workers' Intern. Ass'n,  804 F.2d

11  1472, 1482 (9th Cir. 1986).

12      Although the Federal Rules have adopted a flexible pleading policy, a complaint must

13  still give fair notice and state the elements of the claim plainly and succinctly.  Jones v.

14  Community Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984) (quoting 2A James W. Moore

15  et al., Moore's Federal Practice ¶ 8.13 at 8-111 (2d ed. 1983)).  The plaintiff must allege, with

16  at least some degree of particularity, overt acts which the defendants engaged in that support

17  the plaintiff's claim.  Id.

18                              **DISCUSSION**

19       Even a casual reading of the complaint leads to the inescapable conclusion that

20  dismissal is required.  The challenge the court faces is in articulating a basis for dismissal that

21  is fair to all parties and that is sensitive to Plaintiff's position as a pro se litigant.  There is no

22  question that the complaint fails to make a short plain statement of entitlement for relief.  At

23  112 pages and 97 counts, the complaint is highly redundant, prolix, and suffused with

24  conclusory characterizations cast as factual averments.  However, simply noting that the

25  complaint fails to state a claim upon which relief can be granted because the complaint fails

26  to comply with Rule 8 leaves unanswered the foundational question that should have been

27  asked by Defendants and must, in any case, be answered by the court: does this court properly

28  have jurisdiction over this case?  See Smith v. McCullough, 270 U.S. 456, 459 (1926) ("A

5

plaintiff suing in a federal court must show in his pleading, affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment").  For the following reasons, the court will determine it lacks subject matter jurisdiction in this case.

The starting point of the court's analysis is the determination of what Plaintiff's action is really about.  Plaintiff's attempt to cast this action as an effort to redress violations of her civil rights is belied by what she asks this court to do.  Count 96 of the 97-count complaint asks that this court order:

> . . . that Jared be returned to [Plaintiff's] custody immediately, criminal charges be brought against John Garcia [Jared's father] for criminal activity charged in this lawsuit, the child support order be nullified, John Garcia be placed on supervised visitation in Los Angeles County with him doing all of the traveling and paying for supervised visits at the location of [Plaintiff]; [Plaintiff and] her minor son be made whole; [[Plaintiff] be granted sole physical and sole legal custody, criminal and conspiracy charges be brought up and prosecuted against [non-party] Dianne Ophelia and [non-party] Patricia Mattson Markel; Fresno county take immediate action in this matter to return Jared to [Plaintiff's] custody.  Fresno County immediately provide [Plaintiff] with funds to litigate this matter being Fresno County is responsible and liable for the financial ruin of [Plaintiff.] Said parties cease and desist with the criminal improper illegal corrupt, rogue and reckless conduct immediately.

Doc. # 1 at 110-111.

From the foregoing, it is plain that what Plaintiff is trying to do, beside recover a $75 million monetary damages award, is persuade this court to (1) vacate all custody and child support decrees and judgments of the Fresno County Superior and Family Courts, and (2) step into the role of those courts to issue the orders Plaintiff believes would advantage her position.  This court can do neither.

In both federal question and diversity cases, the Supreme Court has held that "'[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States,' [Citation]."  Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992) (quoting In re Burrus, 136 U.S. 586, 593-594 (1890)).  This "domestic relations exception" "divests the federal courts of power to issue divorce, alimony, and child custody decrees."  Ankenbrandt, 504 U.S. at 703.  The exception may also

extend to matters that are "elements of the domestic relationship" "even when divorce, alimony or child custody is not strictly at issue." Elk Grove Unified School Dist. v. Newdow, 542 U.S. 1, 13 (2004).

Thus, no matter how Plaintiff presents her claims, this court is without any authority to make or modify child custody orders, change child support decrees, or modify the terms and conditions of visitation or domicile status.  That limitation in authority, combined with the fact this court has no authority to supervise state or county agencies or to make orders regarding non-parties to this case, means the court is without authority to take any of the actions Plaintiff requests as injunctive relief.

Nor can this court vacate the judgments or decrees of the state courts.  To ask the district court to invalidate the judgments or decrees of the state court is essentially an appeal to the district court of a state court decision.  "The Rooker-Feldman doctrine takes its name from Rooker v. Fidelity Trust Co., 263 U.S. 413 [. . .](1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 [. . .] (1983).  Under Rooker-Feldman, a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court.  The United States Supreme Court is the only federal court with jurisdiction to hear such an appeal." Noel v. Hall, 341 F.3d 1148,1154 (9th Cir. 2003).

> In its routine application, the Rooker-Feldman doctrine is exceedingly easy.  A party disappointed by a decision of a state court may seek reversal of the decision by appealing to a higher state court.  A party disappointed by a decision of the highest state court in which a decision may be had may seek reversal of that decision by appealing to the United States Supreme Court.  In neither case may the disappointed party appeal to a federal district court, even if a federal question is present or if there is diversity of citizenship between the parties.  Rooker-Feldman becomes difficult – and, in practical reality, only comes into play as a contested issue – when a disappointed party seeks to take not a formal direct appeal, but rather its de facto equivalent, to a federal district court."

Id. at 1155.

Ninth Circuit decisions fall into a relatively clear pattern.  Where the federal plaintiff "complains of a *legal* wrong allegedly committed by the state court, and seeks relief from the judgment of that court," the federal plaintiff has made a forbidden defacto appeal of the state court judgment.  Id. at 1162.  At the core of the forbidden de facto appeal is an allegation of

an erroneous ruling by the state court that leads to the withholding of a benefit from, or imposes a detriment on the federal plaintiff, or in some other way causes harm to the federal plaintiff.  Conversely, "where the federal plaintiff does not complain of a legal injury caused by a state court judgment, but rather a legal injury caused by an adverse party, Rooker-Feldman does not bar jurisdiction." Id. at 1163.

Under the Noel formulation of the Rooker-feldman doctrine, the central question is whether the alleged harm emanates from an erroneous decision of the state court or from an illegal act by an adverse party.  Maldonado v. Harris, 370 F.3d 945, 949-950 (9th Cir. 2004); Noel, 341 F.3d at 1164.  The "inextricably intertwined" issue raised in Noel does not come into play unless there is an independent determination that the federal plaintiff is attempting a forbidden appeal of the state court decision in the federal court.  As the Noel court held:

> The federal suit is not a forbidden de facto appeal because it is "inextricably intertwined with something.  Rather, it is simply a forbidden de facto appeal. Only when there is already a forbidden de facto appeal does the "inextricably intertwined" test come into play: Once a federal plaintiff seeks to bring a forbidden de facto appeal, as in Feldman, that federal plaintiff may not seek to litigate an issue that is "inextricably intertwined" with the state court judicial decision from which the forbidden de facto appeal is brought.

Id. at 1158.  Thus, the initial question is whether Plaintiffs' federal complaint essentially alleges one or more erroneous decisions by the state court or whether the essence of the federal complaint is the allegation of unlawful acts by the defendants.

The wrongs Plaintiff alleges were committed against her primarily consist of the court's refusal to grant a hearing and modification of the custody order and temporary orders that would have permitted the move-away.  Plaintiff also alleges she was wronged by the orders that resulted from the July 19, 2006, superior court hearing, although this court can only surmise what those orders may have been.  Although Plaintiff alleges a large number of acts by both agencies and individuals that she casts as violations of her civil rights, these alleged acts were, in all cases, elements or features of the superior court's proceedings. Plaintiff alleges, for example, that she suffered a civil wrong when the hearing of December 8, 2005,  was inadequately noticed, when the superior court failed to give proper weight to

evidence proffered by Plaintiff of her proper parenting or of Jared's father's improper parenting, when the superior court gave credence to testimony from an individual defendant that Plaintiff contends had "zero credibility," and when the superior court concluded that Plaintiff was not entitled to a hearing on her changed circumstances. Each of the wrongs alleged by Plaintiff consist either of judgments or decrees by the state court, or of some event or piece of testimony that constituted a part of the process that produced the state court's judgment or decree.

The court concludes that the acts that form the primary basis of Plaintiff's complaint consist essentially of one or more decisions by the state court that Plaintiff contends were erroneous. To the extent Plaintiff has alleged other acts by individuals and agencies, those acts are inextricably intertwined with the state court's decisions because they form the basis of the state court's decisions. The fact that Plaintiff casts each act alleged in her complaint as a violation of Plaintiff's constitutional rights in no way alters the court's conclusion. When the court seeks to determine whether an action is a *de facto* appeal from a state court judgment, the court looks to the essence of the action, not to how Plaintiff chooses to frame the action. See Feldman, 460 U.S. at 483 (federal constitutional claims are inextricably intertwined with a state court's judicial proceedings where district court is, in essence, being asked to review the state court's decision). "It is a well settled principle that a plaintiff may not seek a reversal in federal court of a state court judgment simply by casting his complaint in the form of a civil rights action. [Citation.]" Reed v. Terrell, 759 F.2d 472, 473 (5th Cir. 1985). Having thus found that Plaintiff is in essence bringing this action to vacate the state courts' judgments and decrees and substitute in their place this court's judgments and decrees, the court concludes this action is a prohibited *de facto* appeal of the final judgment or decree of a state court. Because Plaintiff's complaint is a *de facto* appeal from the judgments or decrees of a state court, the Rooker-Feldman doctrine applies in this case. The court must therefore conclude it lacks subject matter jurisdiction over this action.

The court must next consider if the court's lack of jurisdiction can be overcome by amendment of the complaint. It is clear to the court that the essence of what Plaintiff seeks is

the vacating of what she considers to be erroneous or improper custody, visitation, and child support orders, and the imposition of orders by this court that are favorable to Plaintiff. These are precisely the sort of orders this court cannot make.  There is no set of facts that the court can imagine that would be both consistent with the facts already pled and that, if added to the complaint, would provide some basis for federal jurisdiction.  Plaintiff's attempt to cast her *de facto* appeal of the state courts' judgments and decrees as civil rights causes of action is transparent.  Based on what has been pled, the court can conceive of no set of facts that could be added or substituted that would state a congnizible civil rights action.  The court therefore declines to grant leave to amend.

THEREFORE, in accordance with the foregoing discussion, Plaintiff's complaint is hereby DISMISSED in its entirety as to ALL DEFENDANTS.  This dismissal is with prejudice.  The Clerk of the Court shall CLOSE THE CASE.

IT IS SO ORDERED.

**Dated:   February 25, 2008**                    _____/s/ Anthony W. Ishii_____
                                                           UNITED STATES DISTRICT JUDGE